IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TELLY HOPINGS, JR., | ) CASE NO. 3:20-cv-1610 |
| Petitioner, | ) |
| | ) JUDGE JAMES R. KNEPP II |
| vs. | ) |
| | ) |
| WARDEN RICHARD A. BOWEN, JR., | ) MAGISTRATE JUDGE |
| | ) JONATHAN D. GREENBERG |
| Respondent. | ) |
| | ) |
| | ) **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of Telly Hopings, Jr. ("Hopings" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. No. 1), the Answer/Return of Writ (Doc. No. 6), and Hopings' Traverse (Doc. No. 7). Hopings is in custody at the Ohio State Penitentiary pursuant to a journal entry of sentence in the case *State v. Hopings*, Lucas County Court of Common Pleas, Case No. G-4801-CR-0201601938-000. For the following reasons, the undersigned recommends that the Petition be DENIED.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The Ohio Court of Appeals for the Sixth Appellate District summarized the facts underlying Hopings' conviction as follows:

> {¶2} On May 8, 2016, Hopings shot E.B. four times, killing him. He then led police on a high-speed vehicular chase, followed by a foot chase, and disposed of the weapon along the way.

*State v. Hopings*, 2019-Ohio-1486, 2019 WL 1765877 (Oh. Ct. App. Apr. 19, 2019).

**II. Procedural Background**

1

**A. Trial Court Proceedings**

On May 19, 2016, the Lucas County grand jury charged Hopings with aggravated murder, Ohio Rev. Code § 2903.01(A) & (F), and murder, Ohio Rev. Code §§ 2903.02(B) & 2929.02, both with firearm specifications; failure to comply with an order or signal of a police officer, Ohio Rev. Code § 2921.331(B) & (C)(5)(a)(ii); and tampering with evidence, Ohio Rev. Code § 2921.12(A)(1) & (B). Doc. No. 6-1 (Exhibit 1). Hopings, through counsel, pleaded not guilty. Doc. No. 6-1 (Exhibit 2).

Hopings filed motions to suppress a pre-trial identification of him by the state's eyewitness and statements he made to law enforcement, which the trial court denied. Doc. No. 6-1 (Exhibits 3, 7, 8, 14). The case proceeded to trial. On the second day, Hopings and the state reached an agreement whereby Hopings would plead guilty under *North Carolina v. Alford*, 400 U.S. 25 (1970), to murder and a firearm specification in exchange for the dismissal of the remaining counts of the indictment. Doc. No. 6-1 (Exhibits 15, 16); Doc. No. 6-2, pp. 2-3 (transcript). The written plea agreement, signed by Hopings, states, "By this plea of guilty, I DO NOT admit committing the offense, but I enter this plea only to avoid the risk of conviction on a more serious offense if I went to trial on the original charge and the possibility of a higher penalty as a result." Doc. No. 6-1, p. 59. The state provided a statement of the evidence that it would have presented had the matter proceeded to trial. Doc. No. 6-2, pp. 14-18. The trial court found that Hopings had been advised of his Constitutional rights, made a knowing, intelligent, and voluntary waiver of those rights, and understood the nature of the charge, the effect of the plea, and the maximum penalty which could be imposed. Doc. No. 6-1, p. 19. The trial court accepted Hopings' plea, made a finding of guilt, and sentenced him to a term of life in prison with the eligibility of parole after 15 years on the murder conviction and three years in prison on the firearm specification. Doc. No. 6-1 (Exhibit 16).

**B. Direct Appeal**

On February 27, 2018, Hopings appealed. Doc. No. 6-1 (Exhibit 17). Through new counsel, he raised the following assignments of error:

> 1. Hopings' plea must be vacated, as the trial court erred as a matter of law by failing to elicit from Hopings his reasons for pleading guilty despite his protestation of innocence.
>
> 2. The trial court erred in denying Hopings' motion to suppress.
>
> 3. Hopings' plea must be vacated as a result of the ineffective assistance of counsel.

Doc. No. 6-1, p. 72 (Exhibit 20). The state submitted a response and Hopings replied. Doc. No. 6-1 (Exhibits 21, 22).

On April 19, 2019, the Ohio Court of Appeals affirmed the trial court's judgment. Doc. No. 6-1 (Exhibit 23); *Hopings*, 2019 WL 1765877. The court rejected Hopings' claim that the trial court had a duty to address him personally to elicit his reasons for entering the plea and to ensure that he had made a rational calculation that it was in his best interest to plead guilty. *Id*. at *2. It also found that the trial court did, in fact, address Hopings. *Id*. The court determined that the trial court was able to derive Hopings' motivation for pleading guilty and ascertain that he had made a rational calculation that the plea was in his best interest from the plea form, defense attorney's explanation of the reasons for the plea, the state's evidence, and the dialogue with Hopings at the plea colloquy. *Id*. at *3.

On June 3, 2019, Hopings, through counsel, appealed to the Ohio Supreme Court. Doc. No. 6-1 (Exhibit 24). He asserted the following propositions of law:

> 1. An *Alford* plea is not lawfully entered and accepted unless the trial court elicits from the defendant an explanation for his actions to ensure that he is making a rational decision to plead guilty despite his protestation of innocence.
>
> 2. Unlike a guilty plea, and much like a no-contest plea, entering an *Alford* plea does not waive the right to raise Fourth Amendment challenges on appeal.

Doc. No. 6-1, p. 151 (Exhibit 25). On August 6, 2019, the Ohio Supreme Court declined jurisdiction. Doc. No. 6-1 (Exhibit 26).

3

### C. Federal Habeas Proceedings

On July 20, 2020, Hopings, through counsel, filed a Petition for Writ of Habeas Corpus pursuant to § 2254. Doc. No. 1. He raised the following grounds for relief:

> **GROUND ONE:** The Ohio courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court case law by failing to rule that Hopings had not entered a valid Alford plea, as a matter of law, because the trial court had not addressed Hopings personally and elicited from him his reasons for pleading guilty despite his protestations of innocence.
>
> **Supporting Facts**: At the plea hearing, the trial court failed to address Hopings and elicit from him information that would address the conflict between his claims of innocence and his decision to plead guilty to murder and explain why he was nevertheless pleading guilty. The Sixth Appellate District wrongly held that the plea was valid despite the trial court failing to personally address Hopings and eliciting that explanation from him.
>
> **GROUND TWO:** The Ohio courts entered a decision that was unreasonable in light of the trial record by finding that Hopings entered a valid Alford plea even though the judge did not address Hopings and resolve the conflict between Hopings' declaration of innocence and his decision to waive trial.
>
> **Supporting Facts**: At the plea hearing, the trial court failed to address Hopings and elicit from him information that would address the conflict between his claims of innocence and his decision to waive trial and explain why he was nevertheless waiving that right to trial. The Sixth District made a finding that the court sufficiently addressed the conflict by noting the reasons behind an Alford plea, largely relying on the written plea form and what Hopings' attorney said at the plea hearing. *State v. Hopings*, 2019-Ohio-1486, at ¶¶ 11-13. Although the judge asked Hopings if he understood the reasons behind an Alford plea, this exchange did not include Hopings resolving the conflict.

Doc. No. 1, pp. 5, 7. Respondent filed an Answer (Doc. No. 6) and Hopings filed a Traverse (Doc. No. 7).

### III. Legal Standard

**A. Exhaustion and Procedural Default**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of

limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

**Exhaustion**. A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g., Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural default**. Procedural default may occur in two ways. *Williams*, 460 F.3d at 806.

First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

6

**B. Merits Review**

In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state

7

courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### IV. Analysis

Both Hopings' grounds for relief stem from his argument that the trial court had a duty to personally address him to elicit his reasons for entering a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), despite his claims of innocence. In Ground 1 Hopings argues that the Ohio Court of Appeals' decision that the trial court had no duty to personally address him was unreasonable, and in Ground 2 Hopings argues that the Ohio Court of Appeals' finding that the trial court did, in fact, address him, was unreasonable. Thus, Hopings challenges the Ohio Court of Appeals' decision under both prongs of 28 U.S.C. § 2254(d)—that the Ohio Court of Appeals' factual finding was unreasonable in light of the evidence presented to it and that its decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

**A.** *North Carolina v. Alford*

Alford was indicted for first degree murder, a capital offense, and the government agreed to accept a guilty plea to a reduced charge of second-degree murder. *Alford*, 400 U.S. at 26-27. Before

8

accepting the plea, the trial court heard testimony from a police officer summarizing the state's case and two witnesses. *Id*. at 28. "Alford took the stand and testified that he had not committed the murder but that he was pleading guilty because he faced the threat of the death penalty if he did not do so." *Id*. He stated that his counsel had advised him of the difference between first- and second-degree murder and his trial rights. *Id*. at 28-29. When the court asked him whether he still wished to plead guilty in light of his denial of guilt, he said that he did "from the circumstances that he (Alford's attorney) told me." *Id*. at 29. The trial court accepted his plea and sentenced him to 30 years to life, the maximum punishment. *Id*.

Alford challenged the validity of his plea. The Supreme Court explained that, "[o]rdinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind." *Id*. at 32. Alford's plea was different because he "entered his plea but accompanied it with the statement that he had not shot the victim." *Id*. The Court concluded that Alford's failure to admit guilt was not a constitutional impediment to a valid plea; "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id*. at 37. The Court added,

> Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. Here the State had a strong case of first-degree murder against Alford. Whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading. Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired. Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term. When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, *see McCarthy v. United States*, *supra*, 394 U.S., at 466—467, 89 S.Ct., at 1170—1171 (1969),[10] its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit

9

constitutional error in accepting it.[]

> [FN10] Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, *see, e.g., Griffin v. United States*, 132 U.S. App.D.C. 108, 110, 405 F.2d 1378, 1380 (1968); *Bruce v. United States, supra*, 126 U.S.App.D.C., at 342, 379 F.2d, at 119 (1967); *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A.2d 294 (1969); and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence. *See, e.g., People v. Serrano*, 15 N.Y.2d 304, 308—309, 258 N.Y.S.2d 386, 388—389, 206 N.E.2d 330, 332 (1965); *State v. Branner*, 149 N.C. 559, 563, 63 S.E. 169, 171 (1908). *See also Kreuter v. United States*, 201 F.2d 33, 36 (CA10 1952).
>
> In the federal courts, Fed.Rule Crim.Proc. 11 expressly provides that a court 'shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.'

*Id*. at 37-38.

**B. The Ohio Court of Appeals' decision**

The Ohio Court of Appeals considered Hopings' challenge to his plea:

{¶ 6} In his first assignment of error, Hopings argues that the trial court erred by failing to elicit from him his reasons for pleading guilty despite his protestations of innocence. He complains that the trial court did not directly address him to ensure that he had made a rational calculation that it was in his best interest to accept the plea bargain offered by the state.

{¶ 7} Under *North Carolina v. Alford*, a defendant may enter a plea of guilty while professing his innocence. Because an *Alford* plea has the same effect as a guilty plea, "it must be made voluntarily, knowingly and intelligently." *State v. Willis*, 6th Dist. Lucas No. L-07-1210, 2008-Ohio-6808, ¶ 4, citing *Alford* at 36-37, 91 S.Ct. 160. To ensure that a defendant has sufficient information to allow him or her to make a voluntary and intelligent decision regarding whether to plead guilty, the trial court must comply with Crim.R. 11(C). *State v. Duhart*, 6th Dist. Lucas No. L-16-1283, 2017-Ohio-7983, ¶ 8. Crim.R. 11(C) sets forth a number of constitutional and nonconstitutional rights that the court must explain to a defendant before accepting his or her plea. *Id*.

{¶ 8} In addition to these Crim.R. 11(C) requirements, where a defendant enters an *Alford* plea, "'[t]he trial judge must ascertain that notwithstanding the defendant's protestations of innocence, he has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor.'" *Willis* at ¶ 6, quoting *State v. Padgett*, 67 Ohio App.3d 332, 338, 586 N.E.2d 1194 (2d Dist.1990).

{¶ 9} Hopings does not claim that the trial court failed to comply with Crim.R. 11(C). He argues

10

only that the trial court erred because it did not directly ask him his reasons for pleading guilty despite his protestations of innocence.

{¶ 10} To begin with, it does not appear that Hopings made "protestations of innocence" at the plea hearing. Although an inquiry may be required in cases – unlike this one – where the defendant pleads guilty but yet protests his or her innocence, we have previously rejected the proposition that the trial court must personally inquire of a defendant to ensure that he or she has made a rational calculation to plead guilty. *State v. Lacumsky*, 6th Dist. Ottawa No. OT-08-060, 2009-Ohio-3214, ¶ 9, citing *State v. Kafai*, 6th Dist. No. WM-99-001, 1999 WL 1262091, 1999 Ohio App. LEXIS 6339 (Dec. 30, 1999). *See also State v. Martinez*, 6th Dist. Lucas Nos. L-09-1152, 2010-Ohio-2791, ¶ 21, fn. 5 ("An affirmative showing in the record of the defendant's motivation in making an *Alfords* [sic] plea * * * may exist absent direct inquiry by the trial court."). Rather, we have held that "the state's narrative statement of the evidence that would have been presented against appellant at trial * * * [may provide] a sufficient basis on which to make that determination." *Martinez* at ¶ 21.

{¶ 11} Additionally, our review of the record demonstrates that the trial court *did* directly address Hopings during the plea colloquy to determine his reasons for entering the plea and to ensure that he had made a rational calculation that it was in his best interest to plead guilty:

> THE COURT: All right. The plea that you are entering today it is called a guilty plea, but it is being done specifically to a case called North Carolina versus Alford.
>
> In this type of plea the Defendant maintains their innocence. However, they accept responsibility for the charge that they enter the plea to – in order to avoid the potential of a more serious punishment.
>
> In this particular case, Count 1 is a [sic] aggravated murder charge with a firearm specification. The sentence in that particular charge if found guilty is a life sentence with the option the Court would select parole eligibility after 20, 25, 30 years or without parole, which is a more extensive sentence.
>
> Also, you have two other charges in Counts 3 and 4 which were each felonies of the third degree, which could be punishment up to 36 months as to each charge. If run consecutive that could add an additional six years of sentence of aggravated murder, which in itself could be a life without parole sentence. Do you understand all that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And that is the sentence that you would be avoiding by accepting this plea. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is that what you intend to do here today?

11

>   THE DEFENDANT: Yes.
>
> {¶ 12} In addition to this dialogue between Hopings and the trial court, Hopings signed a plea form in which he acknowledged that "[b]y this plea of guilty, I DO NOT admit committing the offense, but I enter this plea only to avoid the risk of conviction on a more serious offense if I went to trial on the original charge and the possibility of a higher penalty as a result." His attorney told the court that he and Hopings "had an opportunity to review the plea of guilty pursuant to North Carolina versus Alford," and that "[a]ny questions that he entertained were answered, and he knowingly, intelligently, and voluntarily placed his signature of each side of the document."
>
> {¶ 13} Finally, Hopings's attorney spoke on his behalf, informing the trial court of the reason for Hopings's plea:
>
> > As the Court is well aware, and my client is also, the nature of the plea itself does not indicate that he admits committing this offense. However, for fear of proceeding to trial and perhaps being found guilty of aggravated murder with a firearm spec, and tampering with evidence, and fleeing and alluding the police, and thereby potentially being exposed to a much greater sentence.
> >
> > My client at this time will knowingly, intelligently, and voluntarily withdraw his – waive his Constitutional rights to a trial and withdraw his former plea of not guilty and tender this plea of guilty pursuant to North Carolina v. Alford.
>
> {¶ 14} Given the dialogue between Hopings and the trial court, his execution of the plea form, trial counsel's explanation of his reasons for entering the plea, and the state's summary of the evidence it would have presented at trial, we find that the trial court properly determined Hopings's reasons for entering an *Alford* plea and ascertained that he had made a rational calculation that it was in his best interest to do so. *See Willis*, 6th Dist. Lucas No. L-07-1210, 2008-Ohio-6808, at ¶ 8-9 (concluding that *Alford* plea was properly accepted where defendant reviewed written plea form with counsel, signed the plea form, and responded affirmatively when he was asked by the court whether he was entering the plea to avoid risk of conviction for a more serious offense).
>
> {¶ 15} We find Hopings's first assignment of error not well-taken.

*Hopings*, 2019 WL 1765877, *1-3.

For convenience, the undersigned considers Hopings' grounds in reverse order.

**C. Ground 2 fails on the merits**

In Ground 2, Hopings argues that the Ohio Court of Appeals' factual determination was unreasonable. Doc. No. 7, p. 5. First, he asserts that the Ohio Court of Appeals' finding that "it does not appear that Hopings made 'protestations of innocence' at the plea hearing" is unreasonable in light of the

12

trial court record. Doc. No. 7, p. 5. The undersigned disagrees. Hopings does not identify any portion of the transcript in which he "protested his innocence" at the plea hearing. His assertion that he "demonstrated" his protestation of innocence by going to trial is not a "protestation of innocence" at the plea hearing. Nor is his allegation that he rejected the state's first, non-*Alford* plea deal. Doc. No. 7, p. 5.[1] The undersigned finds that the transcript supports the Ohio Court of Appeals' finding that Hopings did not protest his innocence at the plea hearing.

Next, Hopings argues that the Ohio Court of Appeals' finding that "the trial *did* directly address Hopings during the plea colloquy to determine his reasons for entering the plea and to ensure that he had made a rational calculation that it was in his best interest to plead guilty" is unreasonable. Doc. No. 7, p. 8. He submits, "the trial court did not address Hopings, asking him to explain his reasons for wanting to plead guilty despite his insistence that he was innocent, and the record does not bear that out." Doc. No. 7, p. 8. Again, the undersigned disagrees. The transcript, reproduced by the Ohio Court of Appeals, shows that the trial court asked Hopings if he intended to enter his plea to avoid a higher sentence and Hopings answered, "Yes." 2019 WL 1765877, at *2-3; Doc. No. 6-2, pp. 7-8. Hopings appears to argue that a trial court must ask that question in a way that does not elicit a yes or no response but cites no legal authority in support. He concedes that the plea agreement he signed explained he was doing so to avoid a greater sentence and that his counsel also advised the court that Hopings agreed to the plea deal to avoid a greater sentence. Doc. No. 7, pp. 7-8. He does not dispute that the trial court was presented with the factual basis for a conclusion of guilt. In short, the undersigned finds that Hopings has not shown that the Ohio Court of Appeals' factual determination was unreasonable in light of the plea hearing transcript,

---

[1] In contrast, the defendant in *Alford* stated on the record,

> I pleaded guilty on second degree murder because they said there is too much evidence, but I ain't shot no man, but I take the fault for the other man. We never had an argument in our life and I just pleaded guilty because they said if I didn't they would gas me for it, and that is all.

400 U.S. at 28, n. 2.

and Ground 2 fails on the merits.

**D. Ground 1 fails on the merits**

In Ground 1, Hopings argues that the Ohio Court of Appeals' decision was contrary to Supreme Court precedent when it ruled that the trial court was not required to personally address him to elicit his reasons for pleading guilty pursuant to *Alford*.[2]  Doc. No. 1, p. 5.  Even assuming, *arguendo*, that the trial court did not personally address him to elicit his reasons for pleading guilty, the undersigned finds that Hopings' argument fails on the merits.

Respondent contends that "the *Alford* Court did not hold that a valid guilty plea required the trial judge to personally elicit from the defendant his reasons for entering a guilty plea and ensure that his reasons were sound."  Doc. No. 6, p. 8.  He submits, "The closest *Alford* comes to supporting Hopings['] position for a personal inquiry requirement can be found in dicta in a footnote."  Doc. No. 6, p. 8.  That footnote reads,

> Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, *see, e.g., Griffin v. United States*, 132 U.S. App.D.C. 108, 110, 405 F.2d 1378, 1380 (1968); *Bruce v. United States, supra*, 126 U.S.App.D.C., at 342, 379 F.2d, at 119 (1967); *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A.2d 294 (1969); and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence. *See, e.g., People v. Serrano*, 15 N.Y.2d 304, 308—309, 258 N.Y.S.2d 386, 388—389, 206 N.E.2d 330, 332 (1965); *State v. Branner*, 149 N.C. 559, 563, 63 S.E. 169, 171 (1908). *See also Kreuter v. United States*, 201 F.2d 33, 36 (CA10 1952).
>
> In the federal courts, Fed.Rule Crim.Proc. 11 expressly provides that a court 'shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.'

*Alford*, 400 U.S. at 38, n.10.  In reply, Hopings maintains that the footnoted language is not dicta; "Instead, it was making an affirmative statement of what was required of the trial court judge, when taking a guilty plea from a person that was not admitting to having committing [sic] the charged offense,

---

[2] In his traverse, Hopings contends that the Ohio Court of Appeals "wrongly concluded that *Alford* did not apply."  Doc. No. 7, p. 9.  But the Ohio Court of Appeals applied *Alford*.  *Hopings*, 2019-Ohio-1486, ¶ 14.

to ensure that pleas are entered knowingly and voluntarily [] or more particularly, to further the goal of 'insuring that guilty pleas are a product of free and intelligent choice.'" Doc. No. 7, pp. 1-2 (quoting *Alford*, 400 U.S. at 31).

Even if footnote 10 in *Alford* could be said to be part of the Court's holding,[3] it cites with approval decisions requiring trial courts to accept an *Alford* plea if there is a factual basis for it and after the judge has "inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence." Here, as the Ohio Court of Appeals noted, the trial court heard the factual basis for the plea and inquired into and resolved Hopings' reasons for entering an *Alford* plea: to avoid risk of conviction and sentence on a more serious offence.[4] *Hopings*, 2019-Ohio-1486, ¶ 14. Nothing in footnote 10 states that the trial court can only elicit that information through questions put to the defendant.

The cases Hopings cites in support of his argument that footnote 10 is the *Alford's* Court's holding do not support his reading of what footnote 10 purportedly requires. In *Willett v. State of Ga.*, 608 F.2d 538, 541 (5th Cir. 1979), the court did not rely on, or even mention, the trial court eliciting information from the defendant. In *United States v. Mullins*, 21 F.3d 1108, 1994 WL 171527 (5th Cir. Apr. 22, 1994), the trial court had denied the defendant's motion to withdraw his guilty plea; on appeal, Mullins argued that "his *Alford* plea was improperly accepted because there was no evidence that he was

---

[3] *But see Merced v. McGrath*, 2004 WL 302347, at *19 (N.D. Cal. Feb. 10, 2004) ("[Footnote 10's] cautionary dicta does not create established federal law." (citing *Williams*, 529 U.S. at 412 ("clearly established federal law" refers to Supreme Court holdings not dicta)).

[4] The factual basis for the plea was presented by the prosecutor at the plea hearing. Surveillance footage showed an individual in a white T-shirt, later discovered to be Hopings, pacing in an alley behind a lounge. The victim walked a woman to her car and stood talking to her when Hopings (identified by an eyewitness) walked up the alley and shot at the victim five times, killing him. Nearby officers observed a vehicle in the area and began to follow it, resulting in a high-speed chase (up to 99 mph) that lasted about 10 minutes. At the conclusion of the chase, Hopings abandoned the vehicle and was found nearby in possession of the vehicle's keys. In the vehicle the police found an empty gun box, they found a gun that belonged in that box when they retraced the path of pursuit, and the gun matched the shell casings found at the scene of the shooting. Hopings admitted that he had been involved in the police chase and stated that he "act[ed] the way he did" because he believed that the victim was affiliated with the person whom had killed his cousin. Doc. No. 6-2, pp. 15-18.
.

15

guilty of count 1." *Id*. at *2.  The court of appeals, citing footnote 10 in *Alford* and a Fifth Circuit case, affirmed.  It found that there was evidence Mullins was guilty of count 1 (testimony from a DEA agent) and that Mullins had "conceded" that he was pleading guilty to count 1 to avoid prosecution of an additional count.  *Id*.  That is what happened here: there was evidence that Hopings shot the victim and he conceded that he was pleading guilty to avoid the risk of conviction on a more serious offense and a higher penalty.

Hopings cites *Garza v. Birkett*, 2010 WL 1136808 (E.D. Mich. Mar. 24, 2010), but the court in that federal habeas case rejected Garza's claim that the trial court erred when it denied his motion to withdraw his guilty plea, finding that it was not cognizable.  Hopings did not attempt to withdraw his guilty plea and the fact that the *Garza* court, in a footnote, cited footnote 10 in *Alford* and stated that it did not apply in Garza's case does not mean that it applies and provides relief for Hopings in this case.  In *United States v. Easton*, 980 F.2d 1444, 1992 WL 366569 (5th Cir. Dec. 8, 1992), the court rejected a claim that the trial court's discussion of the defendant's *Alford* plea violated the federal rule proscribing district courts from taking part in plea bargain agreements.  And in *Allison v. State*, 495 So. 2d 739, 741-742 (Ala. Crim. App. 1986), the state court of appeals reversed on direct appeal because the trial court accepted the defendant's guilty plea without finding there was a factual basis for it when the defendant had stated that he had not committed the crime.  Here, the trial court found there was a factual basis for Hopings' guilty plea.  In sum, none of Hopings' cited cases stand for what he says they stand for.

The undersigned finds that Hopings has not shown that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of Supreme Court precedent.  Accordingly, Ground 1 fails on the merits.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date: June 29, 2022

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** *See Berkshire v. Beauvais***, 928 F.3d 520, 530-531 (6th Cir. 2019).**